In the Matter of J.B., a minor child.

STATE of Oklahoma, ex rel. DEPARTMENT OF HUMAN SERVICES, Appellant,

v.

CHEYENNE–ARAPAHO TRIBES OF OKLAHOMA, and Intervenors John and Marie Keith, Appellees.

No. 83723.

Court of Appeals of Oklahoma, Division No. 3.

June 20, 1995.

---

Diane File, Dept. of Human Services, Oklahoma City, for appellant.

Albert Ghezzi, Concho, for appellee Cheyenne–Arapaho Tribes of Oklahoma.

James J. Hodgens, James, Gilmore & Hodgens, Stroud, for appellees John and Marie Keith.

## OPINION

ADAMS, Judge:

The Department of Human Services (DHS) appeals a trial court order transferring this case to tribal court. DHS argues, *inter alia*, the trial court was not legally authorized to transfer the case in its present posture. Because we agree, we reverse the trial court's order and remand for such further proceedings as may be necessary under the law. We need not address arguments by the parties relating to other grounds for reversal raised by DHS.

J.B., an enrolled member of the Cheyenne–Arapaho Tribes of Oklahoma (Tribe), was born on July 10, 1988, with special health needs that will require her to receive lifelong care and supervision. She was adjudged a deprived child, made a ward of the court, and placed in the legal custody of DHS in November of 1988. The Tribe, which had received appropriate notice of these proceedings, intervened in the state court action in January of 1989. No party has ever contended that J.B. resided or was domiciled on a reservation.

DHS placed J.B. in foster care in the home of John and Marie Keith, and she remained there until November of 1993. J.B.'s mother consented to the termination of her parental rights in April of 1991, and J.B.'s father's parental rights were terminated in July of 1991. DHS began to search, with the help of the Tribe, for an adoptive home that could meet J.B.'s long-term needs.

In March of 1993, the District Attorney for Roger Mills County filed a motion alleging good cause existed to seek a preadoption placement outside the preferences listed in the Indian Child Welfare Act, 25 U.S.C. § 1901, *et seq.* (the Act). Following a hearing on April 6, 1993, of which the Tribe received notice and at which the Tribe did not appear, the trial court concluded J.B.'s special needs gave good cause for seeking a home for her outside the preferences listed in the Act. None of the parties raise any issues concerning this order. The case was transferred on April 8, 1993, to Lincoln County where J.B. resided with the Keiths.

DHS evaluated the Keiths and decided they were not appropriate adoptive parents because five-year-old J.B. would require long-term and lifelong care, and Mrs. Keith was then in her mid 60's and Mr. Keith was in his early 70's. In November of 1993, DHS

placed J.B. in a non-Indian home with a couple who are trying to adopt J.B. On February 22, 1994, the Keiths filed a petition to adopt J.B. in trial court. On April 1, 1994, the Tribe filed a motion to transfer jurisdiction of the proceedings concerning J.B. to its court. Following a hearing on May 12, 1994, the trial court ordered that jurisdiction be transferred to the tribal court.

■ The tribal court's authority over cases involving Indian children is found in 25 U.S.C. § 1911, which states, in pertinent part:

(a) Exclusive jurisdiction

An Indian tribe shall have jurisdiction exclusive as to any State over *any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe*, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

(b) Transfer of proceedings; declination by tribal court

In any State court proceeding *for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe*, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.

(Emphasis added.)

Under 25 U.S.C. § 1903(1), the term "child custody proceeding" means and includes:

(i) "foster care placement" which shall mean any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, *but where parental rights have not been terminated*;

(ii) "termination of parental rights" which shall mean *any action resulting in the termination of the parent-child relationship*;

(iii) "preadoptive placement" which shall mean the temporary placement of an Indian child in a foster home or institution after the termination of parental rights, but prior to or in lieu of adoptive placement; and

(iv) "adoptive placement" which shall mean the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption.

(Emphasis added.)

According to DHS, the proceeding which the trial court transferred was not a "foster care placement" because by definition that includes only proceedings "where the parental rights have not been terminated." Further, DHS argues, the transferred proceeding was not a proceeding "resulting in the termination of the parent-child relationship" because termination had already occurred.

The Tribe and the Keiths maintain this argument is irrelevant because the transferred case was a "child custody proceeding" as that term is defined in § 1903(1). It is true that the transferred proceeding is, at the very least, a "preadoptive placement" or an "adoptive placement" and is therefore a "child custody proceeding," as defined in § 1903(1). However, § 1911 does not provide for the transfer of "any child custody proceeding." Congress chose to limit transfer authority to only two of the four proceedings included in the definition of "child custody proceeding."

■ The construction urged by the Keiths and Tribe renders Congress' use of the phrases "foster care placement" and "termination of parental rights" in § 1911(b) a nullity, along with the distinctions between those terms in the definitions in § 1903(1). We must interpret § 1911(b) and § 1903(1) so as to render every word and sentence operative. *State ex rel. Thompson v. Ekberg*, 613 P.2d 466 (Okla.1980). We hold transfer authority is limited to proceedings for "foster care placement" and "termination of parental rights" as § 1903(1) defines those terms.

In addition, the Tribe argues the transferred proceeding was a "termination of parental rights" because it started as such a proceeding. According to the Tribe, so long as the state court proceeding qualified as a "foster care placement" or a "termination of parental rights," at some time during its life, transfer is authorized without regard to what action is pending or potentially pending at the time transfer is requested.

Virtually every proceeding for a "preadoptive placement" or an "adoptive placement" will evolve from a proceeding for "foster care placement" or "termination of parental rights." The Tribe's interpretation would render Congress' specific decision to omit "preadoptive placement" and "adoptive placement" proceedings from the ambit of § 1911(b) futile and meaningless.

We cannot adopt such an interpretation. Although the rule of construction in Indian law is that ambiguous provisions are to be interpreted for the benefit of Indians, *Ahboah v. Housing Authority of Kiowa Tribe of Indians,* 660 P.2d 625 (Okla.1983), the terms used by Congress in § 1903(1) and § 1911(b) are not ambiguous. They are clearly defined. We will not assume that Congress committed a vain and useless act in choosing the words employed in defining the scope of its legislation and the meaning of terms. For purposes of § 1911(b), the nature of the proceeding is determined by what is pending or potentially pending before the state court.

The transferred proceeding was not a "proceeding for the foster care placement of, or termination of parental rights to" J.B. Section 1911(b) of Title 25, United States Code, did not authorize the transfer of this case. The trial court's order is reversed, and the case is remanded for such further proceedings as the law may require.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS

GARRETT, C.J., and HUNTER, J., concur.